IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

ALLEN F. CALTON #1123880 §

v. § CIVIL ACTION NO. 6:12cv344

DR. GARY WRIGHT, ET AL. §

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Allen Calton, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Calton complained of on-going harassment beginning after he gave a deposition on November 12, 2010, as part of another lawsuit which he had filed. He stated that numerous TDCJ officials threatened him, gave him false disciplinary cases, discontinued his medical records, strip searched him in the cold, took his legal materials, sprayed him with pepper spray, handcuffed him too tightly, and used excessive force on him, all of which was done in retaliation for the lawsuit which he filed.

After review of the pleadings, the Magistrate Judge issued a Report on June 29, 2012, recommending that the lawsuit be dismissed. The Magistrate Judge noted that Calton had filed numerous previous lawsuits which had been dismissed as frivolous or for failure to state a claim upon which relief could be granted, and he was consequently subject to the "three-strikes" bar of 28 U.S.C. §1915(g).

1

After discussing the nature of the Section 1915(g) bar, the Magistrate Judge observed that Calton contended that he was in fact in imminent danger of serious physical injury. However, in a lawsuit dismissed just two months before the present one was filed, Calton had also argued that he was in imminent danger, a claim which was rejected by the district court. *See* Calton v. Wright, civil action no. 6:12cv87 (E.D.Tex., dismissed pursuant to 28 U.S.C. §1915(g) March 12, 2012, no appeal taken).

In addition, the Magistrate Judge observed that Calton was relying on a theory of "ongoing danger," saying that the events which had happened in the past show that he is necessarily in imminent danger as of the time of the filing of the lawsuit, and presumably at all other times as well. The Magistrate Judge stated that Calton's theory, if accepted, would provide him with a blanket exception to Section 1915(g) because he could argue that based upon past events, he is in imminent danger at all times and under all circumstances, a result which the Magistrate Judge described as "untenable." The Magistrate Judge concluded that Calton had failed to show "a genuine emergency where time is pressing" and recommended that the case be dismissed, albeit with a reasonable period of time allowed in which to pay the full filing fee and continue with the case.

Calton filed objections to the Magistrate Judge's Report on July 18, 2012. In his objections, he says first that while it is true that the present lawsuit largely repeats the allegations raised in case no. 6:12cv87, the present lawsuit presents a new claim, concerning a "brutal assault" which took place on February 20, 2012, some three months before he signed the present lawsuit. He says that this claim "totally changed the context" in which he is arguing that he is in imminent danger, because in the previous case, he argued that he was in imminent danger because he was being given access to shaving razors even though he has previously attempted suicide five times with razor blades.

In the present case, by contrast, Calton says that he asserts that he is in imminent danger of serious physical injury "due to the pattern of physical abuse supporting the ongoing danger theory." He states that he had also been assaulted on October 26, 2011, and had received multiple

2

threats between October 26, 2011, and February 20, 2012, and he continues to receive threats at the present time.

Calton states that "defendants have always made good on their threats in the past," and so because of the "ongoing physical abuse in the past" and the ongoing threats of physical violence, this id the gateway necessary for the Court to grant him leave to proceed *in forma pauperis*.

Calton cites O'Shea v. Littleton, 414 U.S. 488, 496 (1974), a case preceding the enactment of Section 1915(g) by two decades, as stating that "past wrongs are evidence bearing on whether there is a real immediate threat of repeated injury." O'Shea concerned a claim against state judges for engaging in a continuing pattern and practice of illegal bond setting, sentencing, and jury fee practices in criminal cases. The Supreme Court held that the plaintiffs failed to show an existing "case or controversy" as required for federal jurisdiction, the requested injunctive relief was "intrusive and unworkable," and the plaintiffs failed to establish the basic requisites of equitable relief, including a showing of a likelihood of substantial and immediate irreparable injury. O'Shea is plainly distinguishable and provides Calton with no support for his claims.

Next, Calton cites Ashley v. Dilworth, 147 F.3d 715 (8th Cir. 1998). In Ashley, the plaintiff asserted that he was repeatedly transferred so as to be close to an enemy, who assaulted him each time with various weapons. The complaint was filed "very shortly" after the last such assault. The Eighth Circuit held that these allegations were sufficient to show that the plaintiff was in "imminent danger" within the meaning of Section 1915(g). Ashley did not create an exception to the "imminent danger" requirement, but held that the plaintiff was in imminent danger because he was being repeatedly moved into proximity with a specific, known enemy who had assaulted him on more than one occasion, including shortly before filing the case. Calton has made no such showing; rather, he asserts in effect that he is in "imminent danger" at all times and under all circumstances. He states that he is in "close proximity" to officers at the Michael Unit, who have subjected him to assaults in the past, listing January 2, January 4, and October 26, 2011, as well as February 20, 2012, and that this places him in "imminent danger."

3

As the Magistrate Judge correctly determined, Calton's theory would provide him with a blanket exception to 28 U.S.C. §1915(g), and render that statute inapplicable to him. Any time anything happened to him at the Michael Unit for which he thought a lawsuit was justified, Calton could argue - as he does here - that he was in "ongoing danger" because of these past events and thus in "imminent danger of serious physical injury," thereby evading the requirements of Section 1915(g). The Court declines to conclude that "with one hand Congress intended to enact a statutory rule that would reduce the huge volume of prisoner litigation, but with the other hand, it engendered an open-ended exception that would eviscerate the rule." Abdul-Akbar v. McKelvie, 239 F.3d 307, 315 (3rd Cir. 2001); Althouse v. Murray, civil action no. 6:11cv608, 2011 WL 7403058 (E.D.Tex., November 28, 2011), *Report adopted at* 2012 WL 555411 (E.D.Tex., February 17. 2012, appeal dismissed) (rejecting allegation that understaffing and crowded conditions in the dayroom showed "imminent danger" because such allegations "would create a situation in which §1915(g) would have no effect because prisoners could argue at all times that they are in imminent danger").

Calton argues that Abdul-Akbar is distinguishable because the inmate in that case was only pepper-sprayed once, whereas he, Calton, was pepper-sprayed twice and assaulted on four different occasions. In fact, the plaintiff in Abdul-Akbar also complained that prison officials engaged in "continuing harassment, plots to hurt or kill him, and other forms of retaliation." These allegations were not sufficient to show that he was in imminent danger as of the time of the filing of the lawsuit. Similarly, in the present case, Calton's allegations of "ongoing danger" are not sufficient to show that he was in imminent danger of serious physical injury as of the time that he filed the lawsuit, as required by the Fifth Circuit to trigger the exception to Section 1915(g).

This conclusion is buttressed by the fact that Calton's most recent previous lawsuit, case no. 6:12cv87, was signed by him on February 23, 2012, just three days after the alleged use of force on February 20, 2012. In his objections to the Report recommending dismissal of that case, Calton contended that he was in imminent danger because of the February 20, 2012 assault, and his

lawsuit as well as his objections discussed the three previous incidents. The district court concluded that Calton had failed to show that he was in imminent danger of serious physical injury, and dismissed the lawsuit with prejudice as to its refiling *in forma pauperis*. Calton is simply trying to relitigate those claims in the present case, in which he also seeks *in forma pauperis* status. The Magistrate Judge properly determined that Calton's claims in the present case are repetitive and that he failed to show imminent danger so as to trigger the exception to Section 1915(g).

Next, Calton complains that the Magistrate Judge did not mention Choyce v. Dominguez, 160 F.3d 1068 (5th Cir. 1998), saying that Choyce also relies on the "ongoing danger" theory to find imminent danger. In Choyce, the district court dismissed the plaintiff's lawsuit as barred by Section 1915(g), but granted him leave to proceed *in forma pauperis* on appeal. The Fifth Circuit stated that "there is something of an incongruity between the magistrate judge's finding that Choyce was not in imminent danger of serious physical injury at the time his lawsuit was dismissed and the magistrate judge's implicit determination that Choyce was in such danger when he filed his motion to proceed IFP on appeal." In addition, the Fifth Circuit noted that the magistrate judge may have erred by determining that the relevant date for "imminent danger" was the date of the dismissal, rather than the date of the filing of the complaint, and by determining that there was a 17-month gap between the date of the incident and the date of dismissal, when in fact there was only five months. The Fifth Circuit remanded the case to the magistrate judge to sort these matters out, but specifically did not reach the question of whether the magistrate judge had erred in finding that Choyce was not in imminent danger of serious physical injury. Choyce, 160 F.3d at 1070.

Thus, the remand in Choyce was not based on the "ongoing danger" theory, and in fact did not reach the issue of whether or not the plaintiff was in imminent danger as of the time of the filing of the lawsuit. Instead, the remand was done to resolve the contradiction between the denial of *in forma pauperis* status based upon Section 1915(g) and the grant of *in forma pauperis* status on appeal, as well as because of a computational error and the apparent application of an

5

incorrect standard. None of these factors exist in the present case. Calton's reliance on Choyce is misplaced.

After again attempting to distinguish Abdul-Akbar, Calton says that "each of these individual adverse acts were acts by separate conspirators participating in the ongoing conspiracy to retaliate against the plaintiff for his prior litigation against prison officials in reference to his treat[ment] in prison." He contends that these facts, regarding four alleged assaults over a period of almost 14 months, are sufficient to connect the incidents into a "pattern of threats and actual physical injury that has been ongoing." This is simply a restatement of Calton's implicit assertion that he is in imminent danger at all times and under all circumstances, which would serve to render him exempt from the application of the statute. As such, this contention lacks merit.

Calton complains that the Magistrathe Judge cited unpublished Fifth Circuit decisions as well as published ones, pointing out that unpublished decisions are not precedent. While such decisions are not precedential, they can represent "a reasoned opinion by our court [i.e. the Fifth Circuit] on the same general facts presented in the case." *See* Ballew v. Continental Airlines, Inc., 668 F/3d 777, 782 n.2 (5th Cir. 2012) (citing an unpublished opinion as precedent because it represented just such a "reasoned opinion"); Ballard v. Burton, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (an unpublished decision after January 1, 1996 "is not controlling precedent, but may be persuasive authority.")

Calton goes on to assert that the Magistrate Judge has in effect said that his allegations of "ongoing danger" are not serious enough to surmount the imminent danger exception, noting that the Seventh Circuit has held that Section 1915(g) is not a vehicle for determining the merits of a claim. Citing Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003), he states that "if the court was to follow this logic, a court would not just need to determine whether a prisoner is alleging some type of ongoing or imminent harm; it would also need to fine tune what is 'serious enough' to qualify for the exception."

6

However, the statute requires a showing of "imminent danger of serious physical injury," and so of necessity, a court must examine the circumstances to see if these two requirements - that the danger is imminent, and that the harm threatened is a serious physical injury - are met. Baños v. O'Guin, 144 F.3d 883, 885 (5th Cir. 1998) (noting that in order to implement the statutory scheme of Section 1915(g), the court must "determine if the danger exists" at the time of the filing of the complaint or notice of appeal). As noted by the Magistrate Judge, the courts have held that these requirements are met by the showing of a "genuine emergency" where "time is pressing." Heimermann v. Litscher, 337 F.3d 781, 782 (7th Cir. 2003); *see also* Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003) (assessing level of danger alleged by the plaintiff and determining that his claims that he was forced to work outside in inclement weather on two occasions five months apart, and he was being "forced to work in extreme conditions despite his blood pressure condition," did not sufficiently allege imminent danger). In the present case, Calton's pleadings do not show "a genuine emergency where time is pressing," and so he has failed to meet the threshold requirement for Section 1915(g) for being allowed to proceed *in forma pauperis*. His objections are without merit.

In a "motion for immediate court intervention," filed July 2, 2012, Calton again complains about the four alleged assaults and says that he has been "retaliated against" by "cell searches, strip searches, false disciplinary cases, and threats of physical violence." He complains that these have "become worse" since he requested a TDCJ inmate data sheet, and that he was removed from the law library in handcuffs when he tried to obtain a copy of his inmate trust fund statement. Law library supervisor Anthony Holmes wrote him a disciplinary case for writing the word "notary" in the comment section of the law library log, claiming that Calton had disobeyed an order not to write in the comments section; however, he says that he had written in the comments section before the order was given.

Calton argues that he will pay the filing fee eventually, so "the Court will get its money" and he should be allowed to proceed. He complains that the officials at the Michael Unit

are aware of his complaints but refuse to conduct a "meaningful investigation" This motion also fails to show that Calton was in imminent danger of serious physical injury as of the time of the filing of the lawsuit. Section 1915(g) precludes Calton from paying the filing fee over time because it prohibits him from filing under the *in forma pauperis* statute, which allows inmates not barred by Section 1915(g) to pay the fee in installments.

The Court has conducted a careful *de novo* review of the pleadings in this cause, the Report of the Magistrate Judge, and the Plaintiff's objections thereto. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections have no merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 10) is hereby ADOPTED as the opinion of the District Court. It is further

ORDERED that the Plaintiff Allen Calton's applications for leave to proceed *in forma pauperis* are hereby DENIED and the above-styled civil action is hereby DISMISSED with prejudice as to the refiling of another *in forma pauperis* lawsuit raising the same claims as herein presented, but without prejudice to the refiling of this lawsuit without seeking *in forma pauperis* status and upon payment of the statutory $350.00 filing fee. It is further

ORDERED that should the Plaintiff pay the full filing fee within 15 days after the date of entry of final judgment in this case, he shall be allowed to proceed in the lawsuit as through the full fee had been paid from the outset. Finally, it is

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

**So ORDERED and SIGNED this 1st day of August, 2012.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**